## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CHARLES R. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 4088 |
| | ) | |
| CITY OF JOLIET, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment.

For the reasons stated below, we grant the motion for summary judgment.

### BACKGROUND

Plaintiff Charles R. Jackson ("Jackson") alleges that in the evening of June

18, 2001, he pulled his car over and Defendant Officers Darrell Gavin ("Gavin") and

Robert O'Dekirk ("O'Dekirk") approached his vehicle. Jackson claims that Gavin

asked to see Jackson's driver's license and insurance card, which Jackson produced

for Gavin's inspection. According to Jackson, after his driver's license and

1

insurance card were returned to him, he began walking toward his residence and Gavin asked Jackson if he had something in his mouth. Jackson alleges that he answered that he did not have anything in his mouth. Jackson claims that, at that point, Gavin grabbed Jackson by the throat and, with the assistance of O'Dekirk, forced Jackson's mouth open. Jackson claims that O'Dekirk and Gavin subdued him and handcuffed him. Jackson was taken to the police station and his car was towed.

Jackson claims that on June 20, 2001, a criminal complaint was filed against him for aggravated battery against Gavin and O'Dekirk. Jackson was apparently on probation at the time, because he alleges in his amended complaint that on August 31, 2001, the Will County State's Attorney's Office filed a petition to revoke Jackson's probation due to the criminal charges brought against Jackson. Jackson claims that on June 20, 2003, the Will County judge addressing the petition to revoke his probation denied the petition and the Will County State's Attorney's Office *nolle prossed* the aggravated battery charge.

On January 20, 2005, Jackson filed a nine-count *pro se* amended complaint which includes claims alleging violations of his civil rights pursuant to 42 U.S.C. § 1983 ("Section 1983")(Counts I , II, III, and IV), a claim alleging a violation of 42 U.S.C. § 1985(3)("Section 1985") (Count V), and several state common law claims (Counts VI, VII,VII, and IX). On May 19, 2005, we granted Defendants' motion to

2

dismiss the state law claims in the amended complaint (Counts VI, VII, VIII, and IX) and we granted Defendants' motion to dismiss the municipal liability claim (Count I). We also denied Defendants' motion to dismiss the excessive force claim (Count II), the Fourth Amendment claim (Count III), the Section 1983 conspiracy claim (Count IV), and the Section 1985 conspiracy claim (Count V). Defendants now move for summary judgment on the remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest

on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Local Rule 56.1 and Genuinely Disputed Facts

As is indicated above, we may rule on issues as a matter of law when there are no genuinely disputed material facts. Pursuant to Local Rule 56.1, any facts that are not properly disputed are deemed admitted. Local Rule 56.1; *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920, 922 (7th Cir. 1994)(stating that a court is not

4

"obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions"). A *pro se* individual, like Jackson, is not excused from compliance with Local Rule 56.1. *See, e.g., Greer v. Board of Educ. of the City of Chicago, Illinois,* 267 F.3d 723, 727 (7th Cir. 2001); *Banks v. Archer/American Wire,* 2005 WL 2007227, at *1 (N.D. Ill. 2005). Local Rule 56.1 serves to ensure that the record is clear so that a court may determine if there are issues that are not genuinely disputed and that should be resolved at the summary judgment stage. The parties cannot proceed to trial on issues that are not genuinely disputed by simply creating a clouded record or by creating the appearance of factual conflicts where none genuinely exist. *Matsushita Elec. Indus. Co., Ltd.,* 475 U.S. at 586. Furthermore, Local Rule 56.1 is not simply a technicality. *See Waldridge,* 24 F.3d at 920; *Ammons v. Aramark Uniform Servs., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004)(stating "that a district court is entitled to expect strict compliance with Rule 56.1" and that "[s]ubstantial compliance is not strict compliance").

In the instant action, in order to defeat Defendants' motion for summary judgment, Jackson must do more than simply rely upon his allegations in the pleadings and he must point to the evidence or sources of evidence that he intends to present to the trier of fact. Although Jackson attempts to dispute certain facts in his

response to Defendants' statement of material facts, Jackson fails to appropriately cite to evidence to support his denials. Jackson repeatedly attempts to create the appearance of factual conflict, but he fails to point to any evidence or source of evidence that would indicate that there are genuine factual conflicts. Jackson is not entitled to proceed to the trier of fact and simply ask the trier of fact to speculate in the absence of evidence or to simply rely upon the allegations in his complaint.

### A. Traffic Stop

Defendants contend that Gavin "noticed a gray 1990 Buick LaSabre fail to use a turn signal when making a left hand turn . . . ." (SF 7). Jackson states that he disputes these facts and cites to page 11 of Exhibit C of Defendants' statement of material facts, which is Jackson's deposition transcript. ( R SF 7) . However, in Jackson's testimony on page 11 and on the prior two pages of his deposition that deal with the beginning of the traffic stop, Jackson merely indicates that as he was driving he noticed that the Defendants' police car turned around and began to follow him. (J Dep. 10). Jackson claims that he then pulled over himself while the police car was behind him and that the police car pulled over as well. (J Dep. 11). Jackson does not deny on page 11 of his deposition transcript or on any of the prior two pages of the transcript that he made a left turn without using the proper turn signal.

Therefore, due to Jackson's failure to point to evidence to support his denial, it is deemed to be undisputed that Gavin "noticed a gray 1990 Buick LaSabre fail to use a turn signal when making a left hand turn . . . ." ( R SF 7). This is a perfect example of Jackson's evasive responses to Defendants' motion for summary judgment. In this instance, Jackson has not pointed to any evidence that shows that he properly used his turn signal when making a left turn and yet Jackson claims in his response to Defendants' statement of material facts that it is a disputed issue.

### B. Jackson's Money in Pockets

Jackson admits pursuant to Local Rule 56.1 that the arresting officers approached Jackson's car and asked for his driver's license. ( R SF 9). Jackson also does not dispute that he gave Gavin permission to search his person and vehicle. ( R SF 11). Defendants contend in paragraph 12 of their statement of material facts that Gavin searched Jackson's person "and found large amounts of money in his front and back pockets." (SF 12). Jackson responds by stating that the facts are disputed, but his only citation in support of his denial is to the offense report prepared by Gavin that is attached to Jackson's amended complaint. The report, however, verifies rather than contradicts paragraph 12 of Defendants' statement of facts. In the report, Gavin wrote that he "did [a] pat search," and that he "felt several large

lumps in . . . Jackson's left & right front pocket and his back left pocket." (A Compl. Ex. B 2). Gavin also wrote that "Jackson replied 'I have $400 in 20s in my right pocket' and then stated 'I have about $400 more in my left and about $50 in singles in my back pocket.'" (A Compl. Ex. B 2). Gavin continued, writing that "Jackson then explained that he just likes to carry that much money." (A Compl. Ex. B 2). Therefore, in the absence of a proper citation in support of Jackson's denial of the facts in paragraph 12, the facts are deemed admitted pursuant to Local Rule 56.1.

### C. Plastic Object Under Jackson's Tongue

Defendants contend in paragraph 15 of their statement of material facts that while Gavin was talking to Jackson, Gavin "noticed that [Jackson] had something in plastic under his tongue." (SF 15). Jackson states that he "disputes" such facts and cites to his deposition transcript for support. ( R SF 15). However, Jackson has not pointed to any portion of his deposition during which he contests Gavin's assertion that he saw something in plastic under Jackson's tongue. *See Waldridge,* 24 F.3d at 922 (stating that a court is not "obliged in our adversary system to scour the record looking for factual disputes"). The only citation provided by Jackson in support of his denial is to pages 18, 21, 22, and 23 of his deposition transcript. ( R SF 15). However, none of the pages cited by Jackson support his denial of the claim that

8

Gavin noticed something in plastic under Jackson's tongue when Gavin was talking to Jackson. Page 18 of the deposition transcript contains Jackson's testimony concerning when he was pulled over and when he was asked to step out of the car. (J Dep. 18). There is no reference on page 18 regarding whether Jackson had anything under his tongue. Page 21 of the deposition transcript contains testimony by Jackson regarding his mouth. (J Dep. 21). However, Jackson merely testified that Gavin asked Jackson if he had "anything in [his] mouth, and [Jackson] said, no." (J Dep. 21). Jackson then testified that Gavin proceeded to grab him around the throat. (J Dep. 21). Such testimony merely indicates that when Jackson was questioned by Gavin during the traffic stop, Jackson denied having anything in his mouth. Whether Jackson denied having something in his mouth when confronted by Gavin is not the pertinent issue. The pertinent issue is whether Gavin saw something in plastic under Jackson's tongue. The fact that Jackson may have lied and denied having it in his mouth is not inconsistent with Gavin's contention. The testimony on page 21 does not reflect that Jackson, at his deposition, contended that he never had anything in his mouth during the traffic stop. Thus, the testimony on page 21 does not contradict Defendants' assertion in paragraph 15 that Gavin "noticed that [Jackson] had something in plastic under his tongue." (SF 15).

Finally, Jackson cites to page 23 of his deposition transcript in an attempt to

9

deny the facts in paragraph 15 of Defendants' statement of material facts. However, the testimony on page 23 in no way deals with whether Gavin saw something plastic under Jackson's tongue when he was speaking to Gavin during the traffic stop. Page 23 contains testimony regarding the events that occurred after Gavin had allegedly grabbed Jackson to try and locate the alleged object in his mouth, and contains Jackson's version of events when the officers searched his mouth and handcuffed him. Therefore, pursuant to Local Rule 56.1, it is deemed undisputed that while Gavin was talking to Jackson, Gavin "noticed that [Jackson] had something in plastic under his tongue." (SF 15). Jackson also admits, pursuant to Local Rule 56.1, that Gavin "knows that some drug users and drug dealers keep drugs in their mouth under their tongue" based upon his years of experience as a police officer. ( R SF 16). We also note that although Jackson has admitted, pursuant to Local Rule 56.1, that Gavin saw something under his tongue, even if Jackson could point to evidence that shows that Gavin was mistaken, which Jackson has not done, the evidence clearly shows that Gavin had a good faith belief that he saw the plastic object in Jackson's mouth.

### D. The Punch

Defendants also contend that when Gavin "asked Charles Jackson what he had

under his tongue, Charles Jackson did not respond verbally and took a swing at Darrel Gavin's head." (SF 17). Jackson responds that he "disputes" such facts. In support of his denial of the facts, Jackson cites to pages 18, 21, 22, and 23 of his deposition transcript. ( R SF 17). As is indicated above, page 18 of Jackson's deposition transcript merely contains testimony regarding when Gavin allegedly asked Jackson to get out of his car. (J Dep. 18). On page 21, Jackson indicates that after he told Gavin that he did not have anything in his mouth, Gavin grabbed Jackson's throat. (J Dep. 21). Jackson does not deny anywhere in his testimony on pages 18, 21, 22, or 23 that he tried to punch Gavin during the initial altercation between Jackson and Gavin. ( R SF 18, 21, 22, 23). Jackson also cites to pages 9, 10, and 14 of Exhibit C to his Answer to Defendants' motion to dismiss that was filed on October 2, 2003 ("Exhibit C"), which consists of various police department administrative materials obtained by Jackson pursuant to the Freedom of Information Act. ( R SF 17). However, none of the documents in Exhibit C show that Jackson did not attempt to hit Gavin. In addition, in paragraph 18 of Defendants' statement of material facts, Defendants contend that "Gavin was able to avoid being hit by Charles Jackson . . . ." (SF 18). Jackson does not dispute that Gavin was able to avoid the blow aimed by Jackson at Gavin. ( R SF 18). Therefore, it is deemed undisputed pursuant to Local Rule 56.1 that Jackson "took a swing at Darrel Gavin's

head." ( R SF 17).

### E. Attempt to Flee the Scene and the Tackle by Gavin

Defendants also contend in paragraph 18 of their statement of material facts that after Jackson attempted to hit Gavin, Jackson attempted to flee the scene. (SF 18). Jackson states that he disputes that he attempted to run away from Gavin after Jackson tried to hit him. ( R SF 18). Jackson cites in support of his denial pages 8, 9, and 14 of Exhibit C, but nothing on those pages supports Jackson's denial of the fact that he tried to flee from Gavin after Jackson tried to hit Gavin. If Jackson did have drugs in his mouth he would have been able to dispose of the drugs once he was out of Defendants' sight. Therefore, the facts in paragraph 18 are deemed undisputed pursuant to Local Rule 56.1.

Defendants claim in paragraph 19 of their statement of material facts that as Jackson attempted to flee from them, "Gavin grabbed [Jackson] around the chest to stop him from running while his partner, Officer O'Dekirk helped to get Charles Jackson to the ground to handcuff [him]." (SF 19). Jackson states that he disputes these facts and cites in response pages 8 and 9 of Exhibit C, and pages 18, 21, 22, and 23 of Jackson's deposition transcript but these pages do not contain evidence to indicate that the facts presented in paragraph 19 are inaccurate. Therefore, such

facts are deemed admitted pursuant to Local Rule 56.1.

### F. Instruction to Empty Mouth, Swallow of Object, and the Bite

Defendants next contend in paragraphs 20 and 21 of their statement of material facts that Gavin told Jackson "to spit out whatever he had in his mouth and [Jackson] replied to [Gavin], 'No, f___ you' and began to chew [on] what was in his mouth." (SF 20). Defendants also contend that Jackson bit O'Dekirk's thumb and "swallowed what he had in his mouth." (SF 21). Jackson indicates that he disputes these facts and, in support of Jackson's denial of those facts, he cites to pages 9 to 14 of Exhibit C. ( R SF 20, 21). However, nothing in Exhibit C supports his denial. In fact, the arrest report that is part of Exhibit C, and that is cited by Jackson, entirely corroborates the above facts. The report indicates that Gavin told "Jackson to spit out whatever he had in his mouth" and that "Jackson did swallow whatever he had in his mouth." (Arrest Report 3). The fact that Jackson swallowed what he had in his mouth and the officers legitimately believed that Jackson had done so is also corroborated by the arrest report in Exhibit C. In the report, Gavin indicated that he told Jackson that "if he just swallowed drugs they could kill him if they opened and got in his blood stream" and asked if Jackson wanted his "stomach pumped for his own safety." (Arrest Report 3). Gavin also wrote in the report that Jackson

13

responded: "f_____ you, I'd rather die bitch." (Arrest Report 3). Jackson also cites

to pages 21, 22, and 23 of his deposition transcript. However, nowhere during his

testimony on those pages does Jackson deny that he was told to spit out what was in

his mouth or that he swallowed it and bit O'Dekirk's thumb. In fact, all of Jackson's

testimony on the pages cited by him in support of his denial corroborate those facts.

On page 21, Jackson admitted that he was asked if he had something in his mouth,

which corroborates Defendants' assertions that they thought Jackson had something

in his mouth and that Gavin told Jackson to spit out what he had in his mouth. (J

Dep. 21). On pages 21 and 22, Jackson admits that O'Dekirk put his hands in

Jackson's mouth. This corroborates the officers' claim that they thought Jackson

had something in his mouth and that he had refused to spit out the object. Jackson's

testimony on page 22 of his deposition transcript merely reflects that Jackson said "I

have nothing in my mouth." (J Dep. 22). Again, whether Jackson denied having

anything in his mouth and whether or not he actually had something in his mouth are

entirely separate issues.

Jackson's deposition testimony does not reflect that O'Dekirk put his hand in

Jackson's mouth in order to cause Jackson harm. In Jackson's testimony on pages

22 and 23 of his deposition transcript, Jackson admits that O'Dekirk put his hands in

Jackson's mouth. (J Dep. 22-23). Jackson's testimony indicates that O'Dekirk did

so because he thought Jackson was going to swallow the object in his mouth, and that O'Dekirk was doing his best to stop Jackson from swallowing the object despite the fact that O'Dekirk recognized that he might be bitten by Jackson. (J Dep. 23). Jackson admits that O'Dekirk stated: "[Y]ou better not bite me." (J Dep. 23). Jackson alleges in his amended complaint that "O'Dekirk wrote and submitted a false On-Duty report alleging that Plaintiff Jackson had bitten him upon the right thumb, in an effort to retaliate against Plaintiff Jackson . . . ." (A Compl. Par. 17). However, at this juncture, Jackson cannot simply rely upon the allegations in his pleadings. Fed. R. Civ. P. 56(e). Jackson did not indicate at his deposition that he did not bite O'Dekirk. Also, in Exhibit C, which is cited by Jackson, the documentation corroborates Defendants' contention that Jackson bit O'Dekirk. Gavin's report indicates that "Officer O'Dekirk was bitten on the right thumb." (Arrest Report 3). The injury report in Exhibit C provides that Jackson bit O'Dekirk "on the right thumb." (Injury Report 1).

Therefore, in light of the above analysis and due to Jackson's failure to point to contradictory evidence to support his denial, it is deemed undisputed pursuant to Local Rule 56.1 that Gavin told Jackson "to spit out whatever he had in his mouth and [Jackson] replied to [Gavin], 'No, f___ you' and began to chew on what was in his mouth." ( R SF 20). It is also deemed undisputed that Jackson bit O'Dekirk's

thumb and "swallowed what he had in his mouth." ( R SF 21). Additionally, Jackson acknowledges that the Defendant officers saw something plastic in his mouth, or at the very least, legitimately thought that they did. The undisputed evidence shows that the Defendant officers were merely acting to prevent Jackson from swallowing what was likely incriminating evidence against Jackson and, because the evidence was likely drugs, the evidence also could have posed a danger to Jackson's safety if it were to rupture in his stomach.

## II. Qualified Immunity

Defendants argue that the remaining claims against them are barred because they are protected by qualified immunity. A government official is protected from civil monetary liability by qualified immunity when performing official discretionary functions if the official's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Siebert v. Severino*, 256 F.3d 648, 654 (7th Cir. 2001)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity does not apply to a situation in which "the violation is so obvious that a reasonable state actor would know that what they are doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional." *Id.*

16

In the instant action, Jackson admits that he failed to use his left turn signal and that he was pulled over as part of a proper traffic stop. Jackson admits that he had something in plastic under his tongue, that he was told to spit out the object, and that he swallowed it. Jackson admits that he attempted to run from the scene, tried to hit Gavin, and bit O'Dekirk's finger when O'Dekirk attempted to retrieve the plastic object in Jackson's mouth. If Jackson had swallowed the object and it had been drugs, incriminating evidence may have been lost and Jackson's health would have been in jeopardy if the plastic bag ruptured in his stomach. Thus, the Defendant Officers acted appropriately in attempting to stop Jackson from swallowing the plastic object and no reasonable trier of fact could find that Defendants violated Jackson's constitutional rights or denied him any equal protection of the laws.

Also, as is explained above, even if Jackson had pointed to evidence that would create a genuinely disputed fact as to whether he actually had a plastic object in his mouth and even if Jackson had been able to show that whether or not his constitutional rights were violated was a triable issue, Jackson cannot prevent the application of qualified immunity. Jackson's deposition testimony and other evidence clearly shows that the Defendant Officers at a minimum believed that Jackson had the object in his mouth and that the officers were acting in good faith in

trying to keep him from swallowing it. The fact that the officers unquestionably acted in good faith also shows that they could not have been aware that they were potentially violating any of Jackson's constitutional rights and shows that they are entitled to qualified immunity.

Jackson also complains that the treatment he received when he was subdued and handcuffed was too rough. However, such conduct by the officers was clearly merited considering the fact that Jackson had already attempted to flee the scene, had attempted to strike Gavin, and had succeeded in biting O'Dekirk. The conduct of the officers that is shown by the record was clearly not excessive. Thus, the evidence shows that the Defendant officers acted appropriately in responding to Jackson's misconduct and that the Defendant officers could not have been aware whether they were violating any of Jackson's constitutional rights. Accordingly, Defendants are entitled to qualified immunity on all remaining claims. In addition, as is explained below, Defendants are entitled to summary judgment on the remaining claims.


III. Section 1983 Search and Seizure Claim

Defendants argue that they are entitled to summary judgment on the Section 1983 search and seizure claims. Jackson claims that he was stopped, arrested,

detained, searched, and seized in violation of the Fourth Amendment.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In reviewing a Fourth Amendment claim, the "touchstone" for the "inquiry is reasonableness, . . . a standard measured in light of the totality of the circumstances and determined by balancing the degree to which a challenged action intrudes on an individual's privacy and the degree to which the action promotes a legitimate government interest." *Green v. Butler*, 420 F.3d 689, 694-95 (7th Cir. 2005). An arrest is not constitutional unless the arresting officer has probable cause. *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004). An officer has probable cause "if the totality of the facts and circumstances known to a reasonable arresting officer would support the belief that the suspect has committed or is committing a crime." *Id.* (quoting *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002)).

Based upon the record before us and the facts deemed undisputed pursuant to Local Rule 56.1, it is clear that the arresting Defendant officers in this case had probable cause to arrest Jackson and acted reasonably in light of the circumstances. Jackson admits that he failed to use a turn signal for a left turn and that he was

stopped in accordance with a routine traffic stop. He admits that Jackson was discovered to have large sums of cash in his pant pockets and admits that Gavin saw something in plastic under Jackson's tongue. Jackson admits that he refused to spit out the plastic object and that he swallowed the object. Also, even if Jackson could show that he did not have something under his tongue, Jackson acknowledges that Gavin believed in good faith that Jackson had the plastic object under his tongue. Jackson admits to trying to hit Gavin, biting O'Dekirk, and attempting to flee from the officers. The conduct by Defendants that is reflected by the record before the court does not involve any genuinely disputed facts and the officers' conduct was entirely reasonable in light of the circumstances that they were presented with when they pulled over Jackson's vehicle. Therefore, we grant Defendants' motion for summary judgment on the Section 1983 Fourth Amendment search and seizure claims (Count III).

## IV. Excessive Force Claims

Jackson contends that Defendant officers used excessive force during his arrest. Jackson acknowledges that based upon Gavin's professional experience, Gavin has found that drug users and dealers will hide drugs in their mouths. ( R SF 67). Jackson also acknowledges that Gavin and O'Dekirk have an official duty to

arrest individuals for drug use, resisting arrest, and battery and that handcuffing individuals is in accordance with established police department policies. ( R SF 77, 78). Defendants also contend that neither Gavin nor O'Dekirk deliberately or intentionally caused harm to Jackson. (SF 79, 99). Jackson fails to point to sufficient evidence that would enable a reasonable trier of fact to conclude otherwise. ( R SF 79, 99). The undisputed facts show that Jackson resisted arrest by attempting to strike Gavin, biting O'Dekirk, and attempting to flee the crime scene in order to dispose of the contents in his mouth. The undisputed evidence clearly shows that Defendants acted reasonably in their use of force, in light the circumstances presented by Jackson's misconduct. Therefore, we grant Defendants' motion for summary judgment on the excessive force claims. (Count II).

## V. Conspiracy Claims

Defendants move for summary judgment on the conspiracy claims. Jackson alleges a Section 1983 conspiracy claim and a Section 1985 conspiracy claim. For a Section 1983 conspiracy claim, a plaintiff must establish that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, . . . and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir.

21

2003). For a Section 1985 conspiracy claim, a plaintiff must establish: "(1) a conspiracy; (2) a purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to his person or property or a deprivation of any right or privilege of a citizen of the United States." *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999).

In the instant action, based upon the evidence before us, no reasonable trier of fact could conclude that Defendants violated any of Jackson's constitutional rights. The undisputed facts clearly show that Defendants acted appropriately in stopping Jackson for a traffic stop, attempting to obtain the alleged plastic object in his mouth, and arresting Jackson. Thus, there are no constitutional violations upon which to base a conspiracy claim. Also, based upon the undisputed record and the facts deemed undisputed pursuant to Local Rule 56.1, it is clear that there was no intent by either Gavin or O'Dekirk to deny Jackson any of his constitutional rights, including the equal protection of the laws or privileges and immunities under the laws. Based upon the undisputed evidence, Gavin and O'Dekirk clearly acted properly in light of the circumstances and acted in good faith while conscientiously performing their official duties. As a matter of fact, the officers should be

22

commended for performing their duties properly and at the same time risking injury to themselves in order to protect the community and Jackson's safety and health. Their reward should not be to be subjected to a trial, especially in the absence of evidence against them.

In addition, Jackson has failed to point to evidence that indicates that the arresting officers reached an understanding concerning the physical confrontation with Jackson when he was arrested. Under Jackson's own version of the arrest incident, once Jackson refused Gavin's request to spit out what he had in his mouth, there was a fast-paced series of events that ended up with Jackson subdued in handcuffs. There is no indication that the officers entered into any understanding or agreement during the initial confrontation with Jackson or that the officers even had an opportunity to form such an understanding or agreement. The evidence shows that both the officers were individually occupied while they attempted to subdue Jackson and to obtain the plastic object in his mouth. Therefore, we grant Defendants' motion for summary judgment on the conspiracy claims. (Counts IV and V).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment on all remaining claims.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   January 3, 2006